## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| 1. | **LYDIA BRIDGES,** | ) | |
| | | ) | |
| | **Plaintiff,** | ) | **CIV-15-** 616-R |
| **v.** | | ) | |
| | | ) | |
| 1. | **MIDWEST GERIATRIC** | ) | |
| | **MANAGEMENT LLC, a/k/a** | ) | |
| | **MGM HEALTHCARE d/b/a** | ) | |
| | **SOUTH POINTE** | ) | |
| | **REHABILITATION & CARE** | ) | |
| | **CENTER, and** | ) | |
| 2. | **SOUTH PARK HEALTH CARE,** | ) | |
| | **LLC d/b/a SOUTH POINTE** | ) | |
| | **REHABILITATION AND CARE** | ) | |
| | **CENTER,** | ) | |
| | | ) | **ATTORNEY LIEN CLAIMED** |
| | **Defendants.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Lydia Bridges, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1.      Plaintiff Lydia Bridges is an adult female resident of Cleveland County, Oklahoma.

2.      Defendants are:

a)      Midwest Geriatric Management, LLC a/k/a MGM Healthcare d/b/a South Pointe Rehabilitation and Care Center, an entity doing business in Oklahoma County, Oklahoma; and

1

b)      South Park Health Care, LLC d/b/a South Pointe Rehabilitation and Care Center, an entity doing business in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3.      Plaintiff asserts causes of action based on (1) gender discrimination, sexual harassment, the creation of a sexually hostile work environment, and retaliation which is prohibited by Title VII of the Civil Rights Act of 1964, as amended; (2) violation of the Fair Labor Standards Act ("FLSA") and Oklahoma state law for failure to pay wages; and whistleblowing in violation of state law.

4.      Jurisdiction over the federal claims is vested in this Court under 28 U.S.C. §1331.  This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

5.      All of the claims arose in and around Oklahoma County, and the Defendants are located and/or doing business in such county and may be served in that county. Oklahoma County is located within the Western District of the United States District Court of Oklahoma, wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6.      Plaintiff has exhausted her administrative remedies in that she timely filed a Charge of Discrimination with the EEOC on or about December 12, 2013.  The EEOC issued a Notice of Right to Sue dated on or about March 30, 2015 which Plaintiff received thereafter by mail.  And, Plaintiff has timely filed her Complaint within ninety (90) days from her

2

receipt of the same.

## STATEMENT OF FACTS

7.     Plaintiff was hired as a Licensed Practical Nurse ("LPN") at South Pointe Rehabilitation & Care Center ("South Pointe") in or around November 2010.

8.     In or around August 2012, Midwest Geriatric Management, LLC ("MGM") began managing South Pointe in advance of finalizing the purchase of the facility.  Such purchase was finalized on or about March 15, 2013.

9.     Shortly after her hire, Plaintiff began working two 16-hour overnight weekend shifts.  These shifts totaled thirty-two (32) hours per week; however, she was paid for an additional eight (8) hours of pay, called a "baylor" shift.

10.     While working weekends, Plaintiff reported directly to LPN Supervisor Sharon Bartlett.  If Bartlett was not working, Plaintiff reported to LPN Jennifer (last name unknown).

11.     Thereafter, Plaintiff began working nights on Tuesdays, Wednesdays and Thursdays, in addition to the overnight weekend shifts.

12.     Beginning in or around December 2012, Plaintiff discovered that some of the Certified Nursing Assistants (CNAs) working overnight were neglecting the residents.  For instance, Plaintiff found CNA Hafeez Kadiku sleeping in residents' rooms on multiple occasions.  And, on some occasions, the resident's clothing and linens were soiled while Kadiku slept in the room.

3

13.     On the first occasion, Plaintiff completed a written disciplinary document for Kadiku and submitted it to Bartlett.  However, Bartlett told Plaintiff not to issue the written discipline and that Bartlett would handle it.

14.     However, following her report to Bartlett, Plaintiff again discovered Kadiku sleeping in a resident's room.  Plaintiff reported Kadiku's conduct to Bartlett again and to Unit Manager Tina East.  Both Bartlett and East said they would speak to Kadiku, but did not allow Plaintiff to issue written discipline.

15.     Plaintiff also reported to Bartlett and East that CNA Deidra (last name unknown) was not working when she was supposed to be caring for the residents. Specifically, Deidra was taking extended lunch breaks.  And, even while on the clock, Deidra did not routinely check on the residents and otherwise neglected her duties.

16.     Despite her numerous reports, Plaintiff continued to observe CNAs neglecting the residents.  Each time she observed such conduct, she reported it to management, including but not limited to Bartlett, Jennifer and East.

17.     Plaintiff also reported her concerns to Director of Nursing Shanna Martin, but to no avail.  Therefore, Plaintiff told Bartlett and East that she did not want these individuals, including but not limited to Kadiku and Deidra, working with her residents due to their neglect of the residents.

18.     Following her complaints, Plaintiff's hours were cut in that she was no longer scheduled to work nights on Tuesdays, Wednesdays and Thursdays.

19.     Further, beginning in or around early June 2013, Plaintiff was subjected to unwanted sexual advances and sexually offensive comments from LPN Kevin Sheppard.

20.     Particularly, Plaintiff lost a majority of her belongings in the May 20, 2013 tornado.  Plaintiff asked her co-workers if they had any furniture they were willing to sell. Sheppard told Plaintiff that he had some furniture he could give her and asked what Plaintiff would be willing to do for it.  Based on his demeanor and tone, it was clear to Plaintiff that Sheppard was seeking sexual favors in exchange for the furniture.  Plaintiff told Sheppard that she was not interested in his offer and to let her know how much he wanted for the furniture.

21.     Despite Plaintiff's statements to Sheppard that his sexual advances were unwelcome, Sheppard continued to sexually proposition Plaintiff and ask Plaintiff out on dates.  Plaintiff declined Sheppard's advances each time.

22.     Following Plaintiff's refusal to engage in a relationship with Sheppard, Sheppard began telling other employees that Plaintiff left her husband to engage in a relationship with a female co-worker, Carla Edwards.  This was wholly false.

23.     Sheppard also sexually harassed Edwards and other female employees.  For instance, Sheppard made comments to Edwards that she and Plaintiff should "let [him] in" on their alleged sexual relationship.  Sheppard made further comments that he wanted to engage in a threesome with Plaintiff and Edwards.  And, Sheppard harassed Edwards and other employees to give him Plaintiff's phone number and address.

24.     Plaintiff reported Sheppard's unwelcome conduct and the false rumors he was spreading to Bartlett and East.  Both said they would speak to Sheppard about his conduct.

25.     Plaintiff further reported in or around June 2013 to Director of Nursing Shanna Martin that Sheppard was taking long lunch breaks and appeared to be under the influence of a controlled substance when he returned.  Specifically, Plaintiff observed Sheppard on two (2) occasions returning to work sweating profusely and with constricted pupils.  On one occasion, Sheppard aggressively confronted Plaintiff, stating that she did not "f**k Black men because [Plaintiff] f**ks Black women."   Martin did nothing to address Plaintiff's report.

26.     In or around late June 2013, Sheppard cornered Plaintiff in the medication room.  While blocking the door, Sheppard again told Plaintiff that she did not have to pay for the furniture and stated there were "other things [they] could do," again referring to sexual favors.  Plaintiff was ultimately able to leave the medication room and told Sheppard to leave her alone.

27.     Due to her prior complaints being ignored and her concern that Sheppard's advances were becoming more aggressive, Plaintiff immediately reported Sheppard's unwelcome behavior to Human Resources Representative Rachel Peterson.  Peterson stated an investigation would be conducted, but did not thereafter notify Plaintiff of any results.

28.     Plaintiff also reported Sheppard's conduct to Administrator Marilyn Yeakley. Plaintiff told Yeakley that she was not comfortable working with Sheppard and asked that

he not be scheduled to work in the same hall as Plaintiff.

29.     However, rather than adjust Sheppard's schedule, Plaintiff was retaliated against and scheduled to work nights Monday through Friday beginning in early August 2013. As a result, Plaintiff was not eligible for the baylor shift pay working this schedule and did not receive any overtime hours. In contrast, Sheppard was allowed to continue working overnight weekend shifts.

30.     Plaintiff was off work for one (1) week in or around August 2013 for vacation. Upon her return to work, Plaintiff discovered that another nurse was hired for the weekday night shifts. Thereafter, Plaintiff was not scheduled to work a consistent schedule and was not assigned to work as many hours as she had previously.

31.     On or about October 5, 2013, Plaintiff was given her weekend overnight shifts back. However, she was not paid the additional baylor pay that she received working the same shifts previously. And, other employees working similar shifts were paid for the baylor shift.

32.     Upon returning to the weekend shifts, Plaintiff found that Kadiku was scheduled to work with Plaintiff's residents. It was evident that Kadiku's neglect of the residents had not improved. Therefore, Plaintiff complained to Bartlett, Jennifer, East and Martin about this behavior.

33.     On or about November 6, 2013, Plaintiff was written up by East and Martin for allegedly failing to complete documentation on a resident's transfer to the hospital.

However, the documentation to which Defendants referred was new documentation which Plaintiff had not been trained to complete.  Despite this, Plaintiff was disciplined.

34.    On or about November 15, 2013, Plaintiff was notified of her termination by Jennifer.  However, Jennifer did not have the authority to terminate Plaintiff's employment. Upon information and belief, Martin and/or Yeakley were involved in the decision to terminate Plaintiff.

35.    Plaintiff was told by Jennifer that she was being terminated for failure to administer medication to a resident.  However, such reason was false and merely pretext and in retaliation for Plaintiff's sexual harassment complaints and reports that residents were being neglected by CNAs.

36.    The alleged conduct occurred approximately three (3) weeks before Plaintiff was terminated.  On this occasion, Plaintiff attempted to give Ativan (an anti-anxiety medication) to the resident, but the resident was sleeping soundly and would not wake up. Therefore, Plaintiff noted on the resident's chart that the medication was not given. However, because this was around 1:00 a.m. on a weekend, Plaintiff did not immediately notify the resident's doctor.  Rather, Plaintiff advised the day shift LPN who relieved her that the resident had not taken the Ativan and to notify the doctor of the same.  Such conduct was standard practice.

37.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries as described below.

8

## COUNT I – Title VII

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

38.     The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964, in the nature of gender discrimination, the creation of a sexually hostile work environment, sexual harassment and retaliation.

39.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

40.     Because the actions of Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

## COUNT II - Whistleblowing

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

41.     The acts above-described also constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that

public policy would encourage or, for refusing to do something that public policy would condemn.

42.     As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

### COUNT III - Failure to Pay Wages

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

43.     The acts described above constitute violations of the Fair Labor Standards Act and Okla. Stat. tit. 40 § 165.3 for failure to pay wages and retaliation for complaining of the same.

44.     Defendants did not pay Plaintiff her increased rate of pay from in or around August 2013 through on or about November 15, 2013.

45.     As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff suffered a loss of income and other damages.  As such, Plaintiff is entitled to recover lost wages, liquidated damages, attorneys' fees and costs incurred in connection with this claim.

46.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA and Oklahoma state law.  Defendants knew or showed reckless disregard for the fact that its compensation practices were in violation of these laws and retaliated against Plaintiff after she complained of the same.

## PRAYER

**WHEREFORE** Plaintiff respectfully prays that this Court enter judgment in favor of the Plaintiff and against the Defendants and award compensatory damages, punitive damages, together with any appropriate equitable relief, pre- and post-judgment interest, costs and attorney's fees.

**RESPECTFULLY SUBMITTED THIS <u>3rd</u> DAY OF JUNE, 2015.**

s/Jana B. Leonard
**JANA B. LEONARD, OBA # 17844**
**LAUREN W. JOHNSTON, OBA # 22341**
**LEONARD & ASSOCIATES, P.L.L.C.**
**8265 S. WALKER**
**OKLAHOMA CITY, OK 73139**
**(405) 239-3800 [TELEPHONE]**
**(405) 239-3801  [FACSIMILE]**
leonardjb@leonardlaw.net
johnstonlw@leonardlaw.net
**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

11